UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| **DAVID LEE SMITH, III,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 5:23-CV-00220-MAS** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| *Commissioner of SSA,* | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

David Lee Smith, III ("Smith") appeals the Commissioner's denial of his applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The Court addresses the parties' competing briefs on the matter. [DE 13, 17]. This matter is fully ripe for review.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. PREVIOUS APPLICATION FOR SSI BENEFITS

Smith initially filed an application for SSI benefits under Title XVI on October 16, 2020. [Administrative Transcript ("TR") at 18]. An Administrative Law Judge ("ALJ") conducted a hearing and issued an unfavorable decision on November 18, 2021, supporting the findings of the Commissioner that Smith was not disabled from October 16, 2020 through the date of the decision. [TR at 77–87]. Smith did not

request review of the ALJ's decision, which then became binding.  *C.f.* C.F.R. §§ 416.1467 & 416.1469

**B.    INSTANT APPLICATION FOR SSI**

Smith filed an SSI application on April 18, 2022, alleging disability beginning on November 19, 2021. [TR at 216].  He alleges disability due to obsessive compulsive disorder, suicidal ideation, being a recovering alcoholic, depression, and anxiety. [TR at 211].  Smith's claim was denied initially on July 19, 2022, and denied upon reconsideration on October 6, 2022.  [TR at 100, 92,].  Administrative Law Judge ("ALJ") Jerry Lovitt conducted a hearing on March 16, 2023 and an impartial Vocational Expert ("VE") appeared and testified.

Smith was 41 years old at the alleged onset date.  He completed college and received a bachelor's degree in theater from Western Kentucky University. [TR at 41, 212].  In terms of work history, Smith reported working as a cashier at Dollar General from October 2018 to July 2019, and then as a yoga instructor. [TR at 212].  His hearing testimony reflects that he teaches a yogic medication class. [TR at 47].  He alleges his impairments prevent him from working in several ways. Smith claims that when his "OCD gets triggered" it affects his short-term memory and recall, causing him to take extra time to complete tasks.  [TR 227].  His anxiety can cause him to "shut down"—preventing him from performing even the most mental and physical tasks.  [TR at 227].  He claims that his OCD and depression cause "mush-brain" and he must isolate himself until he can "work up the energy to interact with people."  [TR at 227].  Although he is currently sober, Smith claims that he drank alcohol as a "coping mechanism" to function.  [TR at 227].  He elaborated on the effects

2

of his alleged impairments during the hearing before the ALJ, testifying that he "fight[s] his brain all day" due to his OCD. [TR at 53]. He testified that his conditions impair his focus, speech, and general emotional stability. [TR at 53–54]. He noted experiencing auditory hallucinations and suicidal ideations. [TR at 56]. Smith testified that he would experience "overwhelm" in the workplace, which impacted his interactions with customers and co-workers. [TR at 57–58]. He noted experiencing anxiety attacks due to his impairments. [TR 58]. Regarding his depression, Smith testified that on "bad days" he struggles to get out of bed, complete daily activities, and keep up with personal hygiene. [TR at 61–62].

After considering the record and the hearing testimony of Smith and the VE, the ALJ ultimately found that Smith had the following residual functional capacity ("RFC"):

> . . . perform a full range of work at all exertional levels but with non-exertional limitations. The claimant is limited to no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps stairs; no crawling; no exposure to unprotected heights; and no more than frequent exposure to workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost. He is able to understand, remember, and carry out simple and detailed, but not complex, instructions; requires an occupation with an established and predictable routine; with familiar set procedures in place; with minimal changes occurring during the workday; with no manufacturing sector fast-paced production line, hourly quota, or production pace assembly line work; with occasional interaction with supervisors and coworkers; and only occasional, superficial interactions with the general public.

[TR at 24].

## II.    LEGAL FRAMEWORK

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal

standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decision makers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d

506, 509 (6th Cir. 2007).   The Court must affirm the ALJ's decision if there is

substantial evidence in the record to support it, even if substantial evidence might

also support the opposite conclusion.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387,

393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545.  Likewise, the Court must affirm any

ALJ decision supported by substantial evidence, even if the Court itself might have

reached a different original result.  *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir.

1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis.

*See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20

C.F.R. § 416.920(a)(4).  In the first step, the ALJ decides whether the claimant is

performing substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  In the second

step, the ALJ determines whether the claimant suffers from any severe impairments.

*Id.* at § 416.920(a)(4)(ii).    In  the  third  step,  the  ALJ  decides  whether  such

impairments,  either  individually  or  collectively,  meet  an  entry  in  the  Listing  of

Impairments.  *Id.* at § 416.920(a)(4)(iii).  In the fourth step, the ALJ determines the

claimant's RFC and assesses whether the claimant can perform past relevant work.

*Id.*  at  §  416.920(a)(4)(iv).    Finally,  in  the  fifth  step,  the  burden  shifts  to  the

Commissioner.  The ALJ must consider and decide whether there are jobs that exist

in significant numbers in the national economy that the claimant could perform based

on RFC, age, education, and work experience.  *Id.* at § 416.920(a)(4)(v).  If the ALJ

determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 416.920(a)(4).

ALJ Lovitt issued an unfavorable decision on April 6, 2023.  [TR at 31]. The Appeals Council denied Smith's request for review on May 26, 2023.  [TR at 1]. Smith timely filed this appeal on July 20, 2023.  [DE 1].

### III.   ANALYSIS

Smith argues that the ALJ failed to properly evaluate the medical opinion of a treating physician, Dr. Yu Cho Shih ("Dr. Shih") at Step Four of his sequential analysis.[1]   [DE 13, PageID# 843].  Specifically, he argues that the ALJ failed to consider whether Dr. Shih's opinions were supported by or consistent with the other record evidence, as required by 20 C.F.R. § 416.920c(b)(2).  Finally, Smith contends that the ALJ's failure to follow the agency's own regulations amounts to legal error and that reversal and remand are necessary.

The new regulations provide that "administrative law judges will now evaluate the 'persuasiveness' of medical opinions by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of [20 C.F.R. § 416.920c]."  *Jones v. Comm'r of Soc. Sec.*, No. 3:19-CV-01102, 2020 U.S. Dist. LEXIS 62143, 2020 WL 1703735, at *2

---

[1] The Court notes that Smith does not explicitly identify at which step the ALJ erred to properly evaluate "the limitations opined" by Dr. Shih. [DE 13, PageID# 843].   While some of the same arguments Smith raises regarding the ALJ's purportedly "cherry-picked" analysis could challenge the ALJ's determination at Step 3, the However, Smith's challenge to the ALJ's decision focuses on his complaint that Dr. Shih's reported limitations "were clearly not reflected in the ALJ's RFC." [DE 13, PageID# 844].  Accordingly, the Court concludes that Smith is solely challenging the ALJ's RFC analysis at Step Four of the five-step sequential analysis.

(N.D. Ohio Apr. 8, 2020) (quoting *Gower v. Saul*, 2020 U.S. Dist. LEXIS 39826, 2020 WL 1151069, at * 4 (W.D. Ky, March 9, 2020) (citing 20 C.F.R. § 404.1520c(a) and (b)); see also *Ryan L. F. v. Comm'r of Soc. Sec.*, No. 6:18-CV-01958-BR, 2019 U.S. Dist. LEXIS 207152, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019) ("Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'") (citing 20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a) and (b)(1)) (alterations in original)).

The five factors to be evaluated are supportability, consistency, relationship with the claimant, specialization, and other factors, but supportability and consistency are acknowledged to be the most important factors for consideration. 20 C.F.R. § 416.920c(c)(1)–(5); 20 C.F.R. § 416.920c(b)(2). The regulations define "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations define "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

Assertions that a physician's opinions are consistent with and supported by the record constitute a substantial evidence argument. *Eckert v. O'Malley*, No. 5:22-CV-00316-MAS, 2024 U.S. Dist. LEXIS 34183, at *7 (E.D. Ky. Feb. 28, 2024). Accordingly, the evaluates whether the ALJ properly evaluated those factors such that his decision could be supported by substantial evidence.

A.     <u>SUPPORTABILITY</u>

First, regarding supportability, the ALJ sufficiently evaluated the supportability of Dr. Shih's opinion under social security regulations. He found Dr. Shih's opinions regarding Smith's "marked limitations in all areas of mental functioning" to be unsupported by other objective findings and overly reliant upon Smith's subjective reports regarding his symptoms and limitations. [TR at 28].

"Supportability evaluates how well 'the objective medical evidence and supporting explanations presented by a medical source' support a medical opinion." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 U.S. App. LEXIS 14411, at *15 (6th Cir. June 12, 2024) (quoting 20 C.F.R. § 404.1520c(c)(1) (regulation mirroring § 416.920c(c)(1) for disability insurance benefits). While mental health treatment often relies on subjective descriptions offered by the patient, a physician is still obliged to offer an opinion that contemplates the available objective evidence. *Pierce v. O'Malley*, Civil Action No. 5: 24-035-DCR, 2024 U.S. Dist. LEXIS 131101, at *4–5 (E.D. Ky. July 25, 2024). In this case, the ALJ assessed whether Dr. Shih's ultimate opinion regarding Smith's ability to work was supported by his own treatment records. The ALJ noted that, while the third-party function report completed by Dr. Shih found marked limitations in all areas of mental functioning, Dr Shih's

treatment records "consistently show the claimant to have normal mental status exam findings outside of a depressed or anxious mood and congruent affect[.]" [TR at 29]. The ALJ further noted that Smith's treatment records showed he had been "utilizing coping skills and processing stressors appropriately[.]" [TR at 29]. Finally, the ALJ noted that Dr. Shih's opinion of marketed mental functional limitations was "highly contradicted" by Smith's own reported "activities of daily living" that are documented in Dr. Shih's treatment notes [TR at 29].

Smith complains that the ALJ "cherry-picked" treatment records that supported his conclusion that Dr. Shih's opinions were unsupported and therefore unpersuasive. An ALJ "is not required to discuss every detail presented in the 'voluminous case records' nor does [he] need to explain [his] evaluation of each portion of a medical source's opinion." *Ebeling v. Comm'r of Soc. Sec.*, No. 21-CV-00115, 2022 U.S. Dist. LEXIS 134183, 2022 WL 3006209, at *3 (W.D. Ky. July 28, 2022) (citing 20 C.F.R. § 404.1520c(b)). Contrary to Smith's contentions, the ALJ appears to have longitudinally examined Dr. Shih's treatment notes and then assessed the supportability of Dr. Shih's opinion based on the objective and subjective evidence documented therein. After doing so, the ALJ clearly and logically determined that Dr. Shih's opinion regarding Smith's alleged marked limitations in mental functioning was not supported by his own treatment notes. This analysis is sufficient to comply with 20 C.F.R. § 416.920c.

B.     CONSISTENCY

Second, regarding consistency, Smith again opines that ALJ Lovitt "cherry-picked" the record "to manufacture support for discrediting the disabling opinion

offered by Dr. Shih." [DE 13, PageID# 845]. After a thorough review of the ALJ's decision and the record, the Court rejects this argument and concludes that the ALJ sufficiently explained why he found Dr. Shih's opinion inconsistent with other evidence in the record as required by social security regulations.

When evaluating the consistency of an opinion, the ALJ assesses "whether the medical opinion is consistent 'with the evidence from other medical sources and nonmedical sources.'" *Sallaz*, 2024 U.S. App. LEXIS 14411, at *15 (quoting § 404.1520c(c)(2) (regulation mirroring § 416.920c(c)(2) for disability insurance benefits)). Unlike the supportability factor, an evaluation of a medical opinion's supportability requires the ALJ to compare the physician's opinion to other medical and non-medical evidence from other sources. For instance, it is proper to assess whether the physician's opinion regarding disabling limitations is significantly inconsistent with subjective reports of a claimant or claimant's family member regarding their ability to perform daily activities. SSR 96-2p, 1996 SSR LEXIS 9, *7 (July 2, 1996). An opinion may also be considered inconsistent if other medical sources offer differing or contradictory opinions. *Id.* At other times, when inconsistencies are less obvious, the ALJ may rely upon "clinical signs and laboratory findings" to determine whether the physician's opinion is inconsistent with other record evidence. *Id.*

Here, Dr. Shih's opinion as reported on his third-party function report was that Smith has marked limitations in all areas of mental functioning. [TR at 559–60]. In his assessment of the persuasiveness of Dr. Shih's opinion, the ALJ went through

each functional area and determined that other medical and nonmedical evidence was not consistent with finding a marked limitation in any area. For the first functional area—understanding, remembering, or applying information—the ALJ determined that Smith only had a mild limitation. The ALJ relied upon treatment records that noted a consistent ability to "participate fully in his care" and "understand and follow instructions" related to his treatment. [TR at 22]. The ALJ further noted that his ability in this area was not limited to his own treatment, but also to providing care for his ailing grandmother. Critically, the ALJ emphasized there was no medical evidence that supports a limitation or decrease in cognition or memory. The ALJ noted that Dr. Shih's opinion was inconsistent with counseling records that showed Smith was "utilizing coping skills and processing stressors appropriately[.]" [TR at 29]. Earlier in the decision, the ALJ specifically cited to treatment notes by another treating clinician, Sarah E. Burns CSW. Regarding Smith's cognition, the LJ noted that the treatment record longitudinally indicates "full orientation, no memory impairment, average fund of knowledge, appropriate use of language, and logical, clear, coherent, goal directed and spontaneous thought processes[.]" [TR at 22].

For the second functional area, interacting with others, the ALJ found only a moderate limitation. The ALJ found that Smith's treatment records "fail to show any evidence as to the claimant's presenting as overtly anxious, antagonistic, or hostile when presenting for treatment" and that Smith is "consistently noted to be present with good eye contact and normal speech." [TR at 22]. The ALJ also noted that Smith

participated in several social activities, as reflected in his treatment notes. For instance, the ALJ noted that Smith went on a trip with friends successfully, taught mediation classes online, used the community action bus or got rides from friends to go where he needed to go, participated in family outings, and went to a friend's house for the weekend. [TR at 22].

Regarding concentration, the third functional area, the ALJ noted that Smith has a moderate limitation but that treatment records and other evidence are not consistent with Dr. Shih's opinion that Smith has a marked limitation in this area. The ALJ explained that treatment records show he has difficulty focusing at work and staying on task, but that he was able to provide care for his ailing grandmother. [TR at 23]. He was also able to teach two yoga meditation classes per month, and treatment notes indicate that he celebrated the second anniversary of his yoga program in May 2022. [TR at 23]. The ALJ found that this demonstrated "an ability to stick with and persist at a long-term activity." [TR at 23].

Regarding the fourth area, adapting or managing oneself, the ALJ found a moderate limitation due to evidence that Smith has difficulties "regulating emotions, controlling behaviors, and maintaining well-being in a work setting." [TR at 23]. Nonetheless, the ALJ found no evidence of decompensation in the treatment notes for an extended period. He noted that there was no evidence of any mental health-related hospitalizations or emergent interventions due to his mental health. Furthermore, the ALJ noted that Smith had never been observed as "antagonistic or hostile" when presenting for treatment. [TR at 23]. Smith, for the most part,

**12**

presented as appropriately groomed.  The ALJ ultimately concluded that Smith can adapt to his environment, adapt his routines, and has not decompensated based on the record evidence.  [TR at 23].

The ALJ's decision thoroughly examined what record evidence, if any, was consistent with Dr. Shih's opinion that Smith has marked limitations in all areas of mental functioning.  For each area of mental functioning, the ALJ determined the degree of limitation he felt was supported by the record, and directly pointed to the parts of the record that supported his conclusions.  The ALJ ultimately found that Dr. Shih's opinion was inconsistent with the record, including other provider's treatment notes and Smith's subjective reports of his abilities, daily activities, and challenges.  Smith's contention that the ALJ cherry-picked the record is baseless, as the ALJ appears to have thoroughly assessed and detailed the aspects of the record that supported his conclusions.  Accordingly, this Court finds that the ALJ's analysis of the consistency factor comports with social security regulations.

In sum, as it relates to both factors, the ALJ's decision walked through how Dr. Shih's opinions were unsupported by and inconsistent with the medical and nonmedical evidence in the record.  Accordingly, the Court finds that the ALJ adequately built a "logical bridge" between the medical and nonmedical evidence and its finding that Dr. Shih's opinion was unpersuasive. *Terhune v. Kijakazi*, No. 3:21-CV-37-KKC, 2022 U.S. Dist. LEXIS 130309, 2022 WL 2910002, at \*3 (E.D. Ky. July 22, 2022).  The analysis stops there, as the Court cannot reweigh the evidence or make new credibility determinations. *Young v. Kilolo Kijakazi*, No. 22-273-DLB,

2023 U.S. Dist. LEXIS 109222, at *14 (E.D. Ky. June 26, 2023) (collecting cases); *see also Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, at *2, 2022 U.S. App. LEXIS 33278, 2022 WL 17348838 (6th Cir. Dec. 1, 2022) (writing that a plaintiff's attempt to argue an incorrect application of supportability and consistency is nothing more than a "veiled attempt to have [the court] reweigh the evidence") (citing *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341–43 (6th Cir. 2008)).  Based on the foregoing, the Court finds that the ALJ did not err concerning his assessment of the persuasiveness of Dr. Shih's medical opinions and the RFC determination that followed.

## IV.   CONCLUSION

Upon consideration of the parties' respective briefs and independent review of the ALJ's decision and record evidence, the Court finds that the ALJ followed applicable social security regulations.  Furthermore, the Court rejects Smith's arguments and finds that the ALJ's decision, including his RFC determination, is supported by substantial evidence that is referenced throughout the decision.  For all the reasons discussed, and the Court being sufficiently advised,

**IT IS ORDERED** that the Commissioner's final decision is **AFFIRMED**. A corresponding judgment will follow.

Entered this 20th of September, 2024.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY